# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZANE HUBBARD,<br><br>Plaintiff,<br><br>v.<br><br>CORCORAN STATE PRISON, et al.,<br><br>Defendants. | **Case No. 1:13-cv-01736-AWI-MJS (PC)**<br><br>**FINDINGS AND RECOMMENDATIONS TO (1) DENY DISQUALIFICATION OF MAGISTRATE JUDGE, and (2) DISMISS ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF Nos. 12 & 13)**<br><br>**FOURTEEN DAY OBJECTION DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. The Complaint was dismissed for failure to state a claim.

Before the Court are Plaintiff's motion to disqualify the undersigned and a First Amended Complaint for screening.

**I.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has

1

raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990), quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See *West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.,* 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Id.* Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. *Id.* at 667-68.

## III. PLAINTIFF'S ALLEGATIONS

2

Plaintiff claims that during a prior incarceration at Kern County's Lerdo Correctional Center ("Lerdo") and Wasco State Prison ("Wasco"), Defendants Drew, Rodriguez and Gentry discriminated against him based on his "personal characteristics" and a misclassification of him as a Mexican Mafia Associate. The wrongful classification was based upon improper and inadequate evidence, namely confiscated outgoing mail containing gang member addresses, a fight with an enemy inmate, body markings and artwork. As a result of his classification, he was improperly placed in the segregated housing unit ("SHU") and remained there on his transfer to Corcoran State Prison ("Corcoran").

At Corcoran he has been subjected to illegal elective psychosurgery and shock therapy.

He appeals were improperly processed and denied by Defendants Cribbs, Lozano, Jackson and Goree.

Defendants Moreno, Nickel, Liblen, Escobar, Johnson, Nadeau, Pacillas, Cavazos, Soliman, Anderson, Pina, Castro, Perez, Banks, Graves, Ferguson, Garcia, Tumacder, Villarrial, and Gonzalez, members of the SHU staff and retention committee at Corcoran, have kept him in the SHU indefinitely relying on the flawed finding of gang association, violating Title 15 regulations. He claims continuous segregated housing has caused him to suffer symptoms of post-traumatic stress.

He seeks injunctive relief (expungement of erroneous gang validation and transfer to general population at a mainline prison) and monetary relief.

**IV.  DISCUSSION**

   **A.  Motion to Disqualify**

      1.  Legal Standard

Under 28 U.S.C. § 144, "[W]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned

3

to hear such proceeding." 28 U.S.C. § 144; see *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008); *U.S. v. Johnson*, 610 F.3d 1138, 1147 (9th Cir. 2010). Section 144 also provides that "[t]he affidavit shall state the facts and the reasons for the belief that bias and prejudice exists, . . . [and a] party may only file one such affidavit in any case." *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980). Section 144 expressly conditions relief upon the filing of a timely and legally sufficient affidavit. *Id.*, citing inter alia *United States v. Azhocar*, 581 F.2d 735, 738-40 (9th Cir. 1978). "If the judge to whom a timely motion is directed determines that the accompanying affidavit specifically alleges facts stating grounds for recusal under section 144, the legal sufficiency of the affidavit has been established, and the motion must be referred to another judge for a determination of its merits." *Id.*, citing *Azhocar*, 581 F.2d at 738.

Under 28 U.S.C. § 455(a), "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *Pesnell*, 543 F.3d at 1043. 28 U.S.C. § 455(b) provides in relevant part, "[h]e shall also disqualify himself in the following circumstances: [w]here he has a personal bias or prejudice concerning a party . . ." 28 U.S.C. § 455(b)(1). A motion under § 455 is addressed to, and must be decided by, the very judge whose impartiality is being questioned." *Bernard v. Coyne*, 31 F.3d 842, 843 (9th Cir. 1994). "Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge." *Id.*, quoting *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985)). "[S]ection 455 includes no provision for referral of the question of recusal to another judge; if the judge sitting on the case is aware of grounds for recusal under section 455, that judge has a duty to recuse himself or herself." *Sibla*, 624 F.2d at 868. On the other hand, "in the absence of a legitimate reason to recuse himself, a judge should participate in cases assigned." *United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008).

Under both recusal statutes, § 144 and § 455, the substantive standard is "[W]hether a reasonable person with knowledge of all the facts would conclude that the

4

judge's impartiality might reasonably be questioned."[1] *Pesnell*, 543 F.3d at 1043, quoting *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997). However, the bias must arise from an extrajudicial source and cannot be based solely on information gained in the course of the proceedings. *Id.*, citing *Liteky v. United States*, 510 U.S. 540, 554-56, (1994). "Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *In re Focus Media, Inc.*, 378 F.3d 916, 930 (9th Cir. 2004), quoting *Liteky*, 510 U.S. at 555). "In and of themselves . . . they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.*

Judicial bias or prejudice formed during current or prior proceedings is sufficient for recusal only when the judge's actions "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555; *Pesnell*, 543 F.3d at 1044. However, "expressions of impatience, dissatisfaction, annoyance, and even anger" are not grounds for establishing bias or impartiality, nor are a judge's efforts at courtroom administration. *Liteky*, 510 U.S. at 555-56; *Pesnell*, 543 F.3d at 1044. Judicial rulings may support a motion for recusal only "in the rarest of circumstances." *Liteky*, 510 U.S. at 555; *U.S. v. Chischilly*, 30 F.3d 1144, 1149 (9th Cir. 1994).

Any person alleging that a judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts, or alleging that such judge is unable to discharge all the duties of office by reason of mental or physical disability, may file with the clerk of the court of appeals for the circuit a written complaint containing a brief statement of the facts constituting such conduct. 28 U.S.C. § 351(a).

        2.       Disqualification Should Be Denied

---

[1] Although § 144 applies only to District Court Judges, not Magistrate Judges, "[b]ecause the grounds for disqualification in § 455 and § 144 are similar, they may be considered together." *United States v. Faul*, 748 F.2d 1204, 1210 (8th Cir. 1984).

Plaintiff contends the undersigned acted beyond his (Yosemite Park) jurisdiction and judicially construed law and equity to discriminate against Plaintiff. He bases his claim on this Court's rulings in this and other actions (including denial of requests for appointment of private counsel) that Plaintiff believes were adverse to him. Plaintiff feels such rulings show contempt for the law.

The undersigned Magistrate Judge has jurisdiction over non-dispositive pre-trial matters within this district pursuant to designation by the assigned District Judge. 28 U.S.C. § 636; Local Rules 300-304. This jurisdiction is not dependent upon consent of the parties.

Issuance of decisions unfavorable to a party does not in and of itself constitute a grounds for recusal. It does not do so here. There is a "presumption of honesty and integrity in those serving as adjudicators." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 891 (2009), citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

Plaintiff has provided no facts suggesting a deep-seated, or any, favoritism on the part of the undersigned such as to make fair judgment impossible. The allegations of contempt and discrimination simply reflect disagreement with the Court's orders and nothing more.

The motion to disqualify should be denied.

**B.      First Amended Complaint**

        1.      Classification and Segregation

Plaintiff claims he was wrongly classified as a gang associate and thus forced into indefinite segregated housing.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are limited to freedom

from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Assuming a liberty interest is implicated in Plaintiff's classification status, see *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997) ("sex offender" label coupled with mandatory treatment program triggered procedural protections), and his indefinite confinement in the SHU, see *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (finding a liberty interest in avoiding indefinite confinement in Ohio's "Supermax" facility), he has not demonstrated that he was denied any of the procedural due process protections guaranteed under federal law. These are matters of administrative discretion, *Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003), quoting *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th Cir. 1997), and afford prisoners minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. *Bruce*, 351 F.3d at 1287, citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1100-01 (9th Cir.1986), abrogated in part on other grounds by *Sandin*, 515 U.S. at 472; Hewitt, 459 U.S. at 477 n.9.

In addition to these minimal protections, there must be "some evidence" supporting the decision. *Bruce*, 351 F.3d at 1287, citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). A single piece of evidence may be sufficient to meet the "some evidence" requirement, if that evidence has "sufficient indicia of reliability." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir.1987). The relevant question is whether there is any evidence in the record that could support the conclusion reached. *Hill,* 472 U.S. at 455-56.

Plaintiff does not allege he was denied notice of and opportunity to participate in periodic classification and SHU hearings. He effectively concedes there was some evidence of gang association, see Cal. Code Regs. tit. 15 § 3378 (requirements for independent source items of gang involvement), but argues the evidence was not strong enough to constitute "proof" of gang association. "Proof" is not required; only some evidence in the record. The undersigned finds the evidence used to validate Plaintiff had a rational basis and satisfies due process.

7

1    Plaintiff claims he was denied opportunity to appeal his classification status.
2 However the facts alleged do not demonstrate any Defendant denied Plaintiff appeal
3 rights.

### 2. Cruel Conditions

Plaintiff claims his conditions of confinement were cruel, pointing to his fight with an "enemy" cellmate.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To establish a violation of this duty, the inmate must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer* at 834, citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). Second, the prison official must "know [ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

A failure to keep gangs and their enemies separate can create a substantial risk of serious harm. See, e.g., *Berg v. Kincheloe*, 794 F.2d 457, 460-61 (9th Cir. 1986) (exposing prisoner to possibility of attack by other prisoners). Even if this was the case here, Plaintiff fails to allege that any Defendant acted with deliberate indifference to such risks.

### 3. Discrimination

Plaintiff claims discrimination in the classification process based on his "personal characteristics."

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. The first method requires a plaintiff to show that the defendant has intentionally

discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class. See, e.g., *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Under this theory of equal protection, the plaintiff must show that the defendant's actions were a result of the plaintiff's membership in a suspect class, such as race, religion, or alienage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). The second method requires a showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

Plaintiff does not allege membership in a suspect class or that he was treated differently from similarly situated inmates and that Defendants acted without a penological purpose. See *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004), citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interest."). Nor does he explain what personal character traits he believes motivated the discrimination and why. See *Washington v. Davis*, 426 U.S. 229, 239-40 (1976) (plaintiff must show evidence of discriminatory intent).

He hints at a claim he was wrongly regarded as "Black" when in fact he is "Mexican." Even so, he does not explain how and why this relates to an act of racial discrimination by Defendants. No facts suggests his being perceived as "Black" played a role in the complained of classification and segregation.

####  4. Outgoing Mail

Plaintiff's claims his outgoing letter, containing gang member addresses, was confiscated without notice or opportunity to protest.

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). However, there must be a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison. *Thornburgh v. Abbott*, 490 U.S. 401, 407-408 (1989). Prison officials may also visually inspect outgoing mail to

determine whether it contains contraband material that threatens prison security or material threatening the safety of the recipient, see *Witherow*, 52 F.3d at 266; *Royse v. Superior Court*, 779 F.2d 573, 574-75 (9th Cir. 1986), and censor outgoing mail in furtherance of an important government interest unrelated to the suppression of expression in a way no greater than is necessary to protect that interest. *Procunier v. Martinez,* 416 U.S. 396, 413 (1974), overturned on other grounds by *Thornburgh,* 490 U.S. at 413-14.

Plaintiff concedes the confiscated letter contained gang related information. He has no protectable interest in gang related contraband. See *Arteaga v. Alameida*, 2008 WL 364785, at *10 (E.D. Cal. Feb. 8, 2008) (an inmate does not have a property interest in possessing gang related contraband and not entitled to procedural due process when these materials are removed from his possession). He does not claim the letter included content protected by the First Amendment.

Even if Plaintiff had a protected interest in the outgoing letter, he does not demonstrate he was deprived of minimum procedural safeguards of notice of confiscation and the opportunity to protest. See *Procunier*, 416 U.S. at 417-18, overturned in part by *Thornburgh*, 490 U.S. at 413–14. Plaintiff claims he was not given notice of confiscation. However, he clearly was given such notice as to make him aware of the confiscation when the letter was used in his gang validation proceeding. The facts do not suggest he was denied the opportunity to appeal confiscation or to protest it during validation proceedings.

### 5. Deliberate Indifference

Plaintiff claims Corcoran staff have subjected him to illegal elective psychosurgery and shock therapy. However, this claim is factually unsupported. No named Defendant is linked to the claimed conduct. He does explain how or why this conduct was intended solely to cause him harm, *Farmer*, 511 U.S. at 834, or was an indifferent response to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### 6. Prison Appeals

Plaintiff claims his prison appeals were improperly delayed and denied. A prisoner does not have a claim of entitlement to a grievance procedure. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Ramirez v. Galarza*, 334 F.3d 850, 860 (9th Cir. 2003). Prison staff actions in responding to Plaintiff's prison appeals cannot give rise to any claim for relief under § 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993), citing *Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (D.C. Ill. 1982).

### 7. Title 15

Plaintiff claims Defendants violated Title 15 prison regulations. The existence of Title 15 regulations governing the conduct of prison officials does not necessarily entitle an inmate to sue civilly for their violation. The Court has found no authority to support a finding of an implied private right of action under Title 15, and Plaintiff has provided none. Several district court decisions hold that there is no such right. See e.g., *Vasquez v. Tate*, 2012 WL 6738167, at *9 (E.D. Cal. December 28, 2012); *Davis v. Powell*, 901 F.Supp.2d 1196, 1211 (S.D. Cal. 2012).

Even if Title 15 violations occurred, Plaintiff has no independent § 1983 claim. See *Chappell v. Perrez*, 2011 WL 2296816, *2 (E.D. Cal. June 8, 2011); *Lamon v. Cate*, 2011 WL 773046, *9 (E.D. Cal. February 28, 2011).

### 8. Injunctive Relief

Plaintiff seeks an order expunging his erroneous gang classification. It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a § 1983 action and their sole remedy lies in habeas corpus relief. *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the *Heck* bar, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement— either directly through an injunction compelling speedier release or indirectly through a

judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81. "[A] state prisoner's § 1983 action is barred (absent prior invalidation) if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-2. *Heck v. Humphrey*, 512 U.S. 477, 489 (1994) (until and unless favorable termination of the conviction or sentence occurs, no cause of action under § 1983 exists).

Plaintiff alleges insufficient facts to determine whether expungement of the gang classification would impact the fact or duration of his confinement and be *Heck* barred.

Regardless of *Heck* considerations, injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 22 (2008). To prevail, the party seeking injunctive relief must show either "(1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in [the moving party's] favor." *Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc.*, 762 F.2d 1374, 1376 (9th Cir.1985), quoting *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir.1984); see *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983) (plaintiff must show "real and immediate" threat of injury).

Plaintiff cannot seek injunctive relief where there is no underlying federal claim. *City of Los Angeles*, 461 U.S. at 101-02 (plaintiff must show a "case or controversy" and "real and immediate" threat of injury). Plaintiff has no cognizable claim against named Defendants for the reasons stated. Injunctive relief is moot because it is unsupported by any underlying case or controversy.

**V.    CONCLUSIONS AND RECOMMENDATIONS**

Plaintiff's motion to disqualify the undersigned is factually unsupported. The First Amended Complaint fails to state a claim for relief under § 1983. The prior screening order instructed Plaintiff on the above deficiencies and requirements for correcting them. Plaintiff's ongoing failure to correct these deficiencies is reasonably construed as

a reflection of inability to do so. Leave to amend would be futile and should be denied.

Accordingly, for the reasons set forth above, it is HEREBY RECOMMENDED that (1) the motion to disqualify should be DENIED, and (2) the action be DISMISSED WITH PREJUDICE for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: April 26, 2014        /s/ *Michael J. Seng*
                             UNITED STATES MAGISTRATE JUDGE

13